IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RANDAL KAHUMOKU,          )
                               )  Civ. No. 11-00661 ACK-BMK
         Plaintiff,    )
                               )
    v.                 )
                               )
UNITED AIR LINES, INC.; DOES  )
1-10; DOE ENTITIES 1-10,    )
                               )
        Defendants.   )
_____)

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

For the following reasons, the Court hereby GRANTS United's Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

Plaintiff Randal Kahumoku filed a complaint in state court on September 16, 2011, alleging that his former employer, United Air Lines, discriminated against him on the basis of his criminal record, in violation of Hawaii Revised Statutes section 378-2. (See Doc. No. 1 & Ex. A.) On October 28, 2011, United removed the action to this Court on grounds of federal diversity jurisdiction. (Id.)

United filed the instant Motion for Summary Judgment on November 14, 2012. (Doc. No. 49.) The Motion is supported by a memorandum of law ("Mem.") and a concise statement of facts ("Def. CSF"), as well as declarations from counsel and several United employees, and various exhibits, which include extracts from Kahumoku's deposition testimony ("Kahumoku Dep."; see Doc. No. 50).

Kahumoku filed an Opposition on February 4, 2013. (Doc. No. 58 ("Opp'n").) The Opposition is supported by a concise statement of facts ("Pl. CSF"), a declaration from plaintiff ("Kahumoku Decl."), and various exhibits (see Doc. No. 59).

United filed a Reply in support of its Motion on February 11, 2013. (Doc. No. 61.) The Reply is supported by further declarations and exhibits. (See id.)

The Court held a hearing on the Motion on February 25, 2013.

### FACTUAL BACKGROUND[1]

Kahumoku was employed by United as a customer service representative at Kona Airport, beginning on May 1, 2007. (Def. CSF ¶ 14.) In early October 2009, United's general manager at Kona Airport, Greg King, learned that Kahumoku had a felony conviction. (Id. ¶¶ 15-16.)[2] King and United's operations supervisor at Kona Airport, Craig Bird, placed Kahumoku on paid leave while United investigated the situation. (Def. CSF ¶ 16.) Until he was placed on leave in October 2009, Kahumoku had

---

[1] The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

[2] Both parties makes allegations and arguments about whether Kahumoku was truthful in the background questionnaire he filled out when he applied for the job at United. Since any alleged dishonesty in that questionnaire was not a ground on which United fired Kahumoku (see Def. CSF Exs. 7 & 9), those allegations and arguments are not relevant here. The Court notes, however, that the key question at issue, question 11, was compound and remarkably poorly drafted. (See Def. CSF Ex. 2 at D00030.)

2

received fully successful performance evaluations and was never disciplined for any reason. (Kahumoku Decl. ¶¶ 7, 10.)

As United discovered, Kahumoku had been convicted of sexual assault in the third degree on April 3, 1995. (Def. CSF Ex. A-3 at 2; Pl. CSF ¶ 1.) In 1995, Hawaii Revised Statutes section 707-732 stated, as relevant here:

> A person commits the offense of sexual assault in the third degree if . . . [t]he person knowing subjects to sexual contact another person who is mentally defective, mentally incapacitated, or physically helpless, or causes such a person to have sexual contact with the actor.

Haw. Rev. Stat. § 707-732(1)(c) (1993). Sexual assault in the third degree was, and still is, a class C felony. Id. § 707-732(2).

Kahumoku was convicted based on his sexual contact with a young man, M.N. (Kahumoku Decl. ¶ 30.) M.N. was around 25 years old at the time[3] and was residing in a long-term care facility, from which he was eventually discharged. (Kahumoku Decl. ¶ 30; Kahumoku Dep. at 82:3-7.) He had suffered a head injury in a swimming accident and was unable to get out bed without assistance. (Id. at 80:19-81:2, 82:8-23, 86:8-87:1.) M.N. stayed in the long-term care facility for at least two years, between 1993 and 1995, during which time Kahumoku visited him multiple

---

[3] A person may also be found guilty of sexual assault in the third degree for having sexual contact with a minor. See Haw. Rev. Stat. § 707-732(1)(b), (c). The Court notes for clarity's sake that there are no allegations and no evidence in this case that Kahumoku ever had sexual contact with a minor.

times per week and they "had sex" between two and four times.
(Id. 84:2-25.) Kahumoku describes his involvement with M.N. as a
"long term romantic relationship" and states that they were "in
love." (Kahumoku Decl. ¶ 30.)

Kahumoku was sentenced to, and served, five years in
prison and was released on June 27, 2000. (Def. CSF ¶ 5.)

United's customer service representatives, among other
duties, help disabled and sick passengers board and leave the
airplanes and wheel wheelchair-bound passengers around the
airport. (Id. ¶¶ 6-7; King Decl. ¶¶ 3, 4; CSR Decls.[4] ¶ 3; see
Kahumoku Decl. ¶ 6.) They may be alone with disabled passengers
while doing so. (King Decl. ¶ 5; CSR Decls. ¶ 3.) They may be
required to help a disabled passenger to the restroom, where
there are no security cameras. (Def. CSF ¶ 8; King Decl. ¶ 7; CSR
Decls. ¶ 4.) The customer service representatives become familiar
with regular customers. (Def. CSF ¶ 7; CSR Decls. ¶ 6.)

Kahumoku, however, was never required to be alone with
a disabled passenger in the time that he worked for United, and
never took any passenger to the restroom. (Kahumoku Decl. ¶¶ 30,
36.)

_____

[4] United submitted declarations from five employees who are
or have been customer service representatives at Kona Airport -
Alan Harada (who was Kahumoku's union representative, see
Kahumoku Decl. ¶ 39), Kirk Stephenson, Scott Hedin, Roxanne
Takamoto, and Patrick Dinwiddie - detailing their job duties.
Other than a first paragraph detailing the employees' individual
work histories, the declarations ("CSR Decls.") are identical.

On January 13, 2010, King and Bird recommended that Kahumoku be fired because of his conviction for sexual assault in the third degree. (Def. CSF ¶ 17 & Ex. 7.) Following the procedures required by Kahumoku's union's collective bargaining agreement, United held an investigative review hearing on March 29, 2010, at which Kahumoku was represented by his union, and United was represented by King. (Id. ¶ 18.) On April 28, 2010, the hearing officer confirmed Kahumoku's termination "due to the nature of the felony offense," noting the "contact with the public" required in a customer service position. (Def CSF ¶ 19 & Ex. 9.) The hearing officer instructed Kahumoku to return any United property, including badges and parking stickers, to King. (Id.)

Kahumoku continued to pursue United's internal grievance procedures, but was ultimately informed by letter on December 3, 2010, that his termination was being upheld. (Pl. CSF Ex. G.)

In May 2010, Kahumoku filed a charge of discrimination with the Hawaii Civil Rights Commission ("HCRC"). (Def. CSF ¶ 20.) HCRC rejected the charge on July 8, 2011. (Id. ¶ 21.) Kahumoku received a right-to-sue letter from HCRC on August 10, 2011 (Id. Ex. 14), and filed this action in state court on September 16, 2011 (see Doc. No. 1, Ex. A).

## STATUTORY SCHEME & RELEVANT LEGISLATIVE HISTORY

In 1981, the state legislature passed Hawaii Revised Statutes section 378-2, making it unlawful "[f]or any

employer . . . to bar or discharge from employment" any individual "[b]ecause of . . . arrest and court record." In 1998, however, the legislature enacted Hawaii Revised Statutes section 378-2.5. The bill on which section 378-2.5 was based originally intended "to repeal the prohibition against employment discrimination based upon arrest and court record." H. Comm. on Labor & Public Employment, 19-3528, Reg. Sess., at 1140 (Haw. 1998); H. Comm. on the Judiciary, 19-3528, Reg. Sess., at 1300 (Haw. 1998). In considering the bill, the House Standing Committee on Labor & Public Employment observed that section 378-2's "broad prohibition [against considering criminal records] unreasonably hampers employers in making informed employment decisions." H. Comm. on Labor & Public Employment, 19-3528, Reg. Sess. at 1140 (Haw. 1998). Section 378-2.5 was therefore designed "to allow employers to consider a criminal conviction record[] of current or prospective employees without" violating Hawaii's employment discrimination laws. S. Comm. on Human Resources, 19-3528, Reg. Sess., at 1208 (Haw. 1998); S. Comm. on the Judiciary, 19-3528, Reg. Sess., at 1331 (Haw. 1998).

Section 378-2.5 states that "an employer may . . . consider an individual's criminal conviction record concerning . . . termination" provided that (1) the conviction record falls "within a period that shall not exceed the most recent ten years, excluding periods of incarceration,"[5/] and

---

[5/] The phrase "excluding periods of incarceration" was added to the statute in 2003 to harmonize section 378-2.5 with other

(2) "the conviction record bears a rational relationship to the duties and responsibilities of the position." Haw. Rev. Stat. § 378-2.5.

During deliberations on the bill, the Senate Standing Committee on Human Resources drafted an amendment to the bill that would have required the employer to "make an individualized assessment of the circumstances associated with the record of conviction and any evidence of rehabilitation to determine if the person is suitable for employment." S. Comm. on Human Resources, 19-3528, Reg. Sess., at 1208 (Haw. 1998). The committee also would have required a "substantial relationship" (rather than a "rational" relationship) between the conviction record and the job duties in question. Id. Neither of these draft amendments appeared in the final enacted legislation. See Act 175, H.B. 3528 (Haw. 1998).

## LEGAL STANDARD

A party may move for summary judgment on any claim or defense - or part of a claim or defense - under Federal Rule of Civil Procedure ("Rule") 56. Summary judgment "should be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Maxwell v. Cnty. of San Diego, 697 F.3d 941, 947 (9th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). Under Rule 56, a "party asserting that a fact cannot be or is genuinely disputed

---

state statutes regarding criminal background checks. Act 95, S.B. 830 (Haw. 2003).

must support the assertion," either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The substantive law determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th Cir. 2012). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Scott v. Harris, 550 U.S. 372, 380 (2007) (citation omitted).

A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." United States v. Arango, 670 F.3d 988, 992 (9th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). Conversely, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott, 550 U.S. at 380.

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. Avalos v.

8

<u>Baca</u>, 596 F.3d 583, 587 (9th Cir. 2010).[6] If the moving party satisfies its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Sluimer v. Verity, Inc.</u>, 606 F.3d 584, 587 (9th Cir. 2010). The nonmoving party must present evidence of a "genuine issue for trial," Fed. R. Civ. P. 56(e), that is "significantly probative or more than merely colorable," <u>LVRC Holdings LLC v. Brekka</u>, 581 F.3d 1127, 1137 (9th Cir. 2009) (citation omitted). Summary judgment will be granted against a party who fails to demonstrate facts sufficient to establish "an element essential to that party's case and on which that party will bear the burden of proof at trial." <u>Parth v. Pomona Valley Hosp. Med. Ctr.</u>, 630 F.3d 794, 798-99 (9th Cir. 2010) (citation omitted).

When evaluating a motion for summary judgment, the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007). The court may not, however, weigh conflicting evidence or assess credibility.

---

[6] When the party moving for summary judgment would bear the burden of proof at trial, the movant must present evidence which would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. <u>Miller v. Glenn Miller Prods.</u>, 454 F.3d 975, 987 (9th Cir. 2006) (citation omitted). In contrast, when the nonmoving party would bear the burden of proof at trial, the party moving for summary judgment may meet its burden by pointing out the absence of evidence from the nonmoving party. <u>Id.</u> (citation omitted).

In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008).[7] Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. Anderson, 477 U.S. at 250-51.

### DISCUSSION

United argues that it is entitled to summary judgment under Hawaii Revised Statutes section 378-2.5 because it fired Kahumoku due to a criminal conviction that fell within the preceding ten years (excluding his time in prison)[8] and that was rationally related to Kahumoku's job duties. Kahumoku, on the other hand, argues that his conviction did not fall within the

---

[7] Nonetheless, a "conclusory, self-serving affidavit" that lacks detailed facts and supporting evidence may not create a genuine issue of material fact. F.T.C. v. Neovi, Inc., 604 F.3d 1150, 1159 (9th Cir. 2010). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott, 550 U.S. at 380. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012).

[8] In its Reply, United argued for the first time that it is exempt from the ten-year requirement under subsection 378-2.5(d)(12). United likely could have prevailed on the issue of the ten-year time limit under this subsection, but did not make this argument in its Motion despite making other arguments under the other subsections of the same statute. Kahumoku has had no chance to brief an argument under subsection 378-2.5(d)(12) and the Court therefore declines to consider it. See L.R. 7.4 ("Any argument raised for the first time in the reply shall be disregarded."); see, e.g., Menashe v. Bank of N.Y., 850 F. Supp. 2d 1120 (D. Haw. 2012) (declining to consider arguments raised for the first time in a reply in support of a motion to dismiss).

preceding ten years and was not rationally related to his job duties. The Court will address each issue in turn.

## I.   Ten-Year Limitation

First, an employer proceeding under section 378-2.5(a)-(c) may consider an individual's criminal conviction record only if it "fall[s] within a period that shall not exceed the most recent ten years, excluding periods of incarceration." Haw. Rev. Stat. § 378-2.5(c). It is undisputed that Kahumoku was released from prison on June 27, 2000. (Def. CSF ¶ 5; Pl. CSF ¶ 5.) The question, then, is whether United acted under the meaning of the statute within ten years of that date, i.e., before June 27, 2010.

Kahumoku argues that he was only terminated on December 3, 2010, when United sent him a letter stating that he had exhausted all grievance procedures and that his termination had been upheld (see Pl. CSF Ex. G), and therefore that United acted too late. This argument is unconvincing. The statute on its face says that an employer may "inquire into and consider" convictions within the most recent ten years, excluding incarceration periods. Haw. Rev. Stat. § 378-2.5(c). It appears that Kahumoku's discharge was effective on April 23, 2010, when the United hearing officer affirmed his termination and ordered him to return his badge and parking pass to his manager. (See Def. CSF Ex. 9.) Regardless, it is clear that United "inquire[d] into and consider[ed]" Kahumoku's conviction, and made its decision based on the conviction, within the ten-year period. Kahumoku's

11

suggested interpretation of the statute not only would strain its plain language, but also would encourage employers to rush to terminate employees in situations like Kahumoku's, and would encourage employees to draw out reviews or appeals of their terminations.

The Court finds that there is no genuine issue of material fact that Kahumoku's conviction for sexual assault in the third degree fell "within . . . the most recent ten years, excluding periods of incarceration."

## II.   **Rational Relationship**

Second, an employer may only "consider" an individual's criminal record for purposes of termination where "the conviction record bears a rational relationship to the duties and responsibilities of the position." Haw. Rev. Stat. § 378-2.5(a). Kahumoku argues that his conviction for sexual assault in the third degree is not rationally related to the duties and responsibilities of a United customer service representative; United argues that it is.

As a preliminary matter, the Court agrees with Kahumoku that HCRC's determination that there was a "rational relationship" between Kahumoku's conviction and his job duties (Def. CSF Ex. 13) is entitled to little, if any, deference. United points to state court cases stating that HCRC's regulations and its interpretation of its own regulations should be deferred to. (See Mem. at 19 (citing cases).) But in this case, HCRC promulgated no regulations based on section 378-2.5

12

and gave no rationale whatsoever for its determination in Kahumoku's case, let alone an interpretation or explanation of the statute. The Court is not obliged to defer to HCRC's bald assertion that Kahumoku's conviction was rationally related to his position, particularly given that HCRC's subsequent right-to-sue letter to Kahumoku notes that "[t]his does not necessarily mean that the problems you alleged did not occur"(Defs. CSF Ex. 14).

Hawaii case law contains little guidance as to the "rational relationship" determination. Section 378-2.5 has been discussed in only one state appellate case, Wright v. Home Depot USA, Inc., 142 P.3d 265 (Haw. 2006). Wright offers only the unhelpful tautology that "the relationship between the conviction and the employment must be rational." Id. at 275-76. The Hawaii Supreme Court has stated elsewhere, however, that "the words of a law are generally to be understood in their most known and usual signification," and where a term is not statutorily defined, the court "may resort to legal or other well accepted dictionaries to determine its ordinary meaning." Gillan v. Gov't Emps. Ins. Co., 194 P.3d 1071, 1077 (Haw. 2008). Webster's Dictionary defines "rational" as, inter alia, "of, relating to, or based upon reason." Webster's Third New International Dictionary 1885 (2002).

The Hawaii Supreme Court in Wright examined the legislature's committee reports on the 1998 bill to determine whether section 378-2.5 was intended to apply to current as well

13

as prospective employees. 142 P.3d at 274-75. The legislature's committee reports are also relevant in this case. They show that the state senate considered and rejected modifications to section 378-2.5 which would have required a "substantial relationship" between the conviction record and the job duties, as well as requiring the employer to "make an individualized assessment of the circumstances associated with the record of conviction." S. Comm. on Human Resources, 19-3528, Reg. Sess., at 1208 (Haw. 1998) (emphasis added). Both these amendments were rejected by the Senate Committee on the Judiciary and did not appear in the final enacted bill, which requires only a "rational relationship" between the conviction record and the job duties and does not require any "individualized assessment" by the employer. See Act 175, H.B. 3528 (Haw. 1998).[9]

---

[9] United notes that two state representatives stated, during discussion before the state legislature enacted section 378-2.5, that "rational relationship" was intended to be a very low standard. Representative Tom stated, "the 'rational relationship' between the job and the conviction is the lowest standard you can look at. . . . 'Rational' is a lot lower than 'reasonable.' 'Rational' is a very, very low and fair relationship to establish." 19 H. Journal 770 (Haw. 1998). Representative Pendleton stated, "[t]he intent of this body [is that] pretty much any conviction would bear 'rational relationship' to job qualifications . . . ." Id. at 771.
    Kahumoku counters that Wright itself explicitly cautions against relying on "passing comments" of members and "casual statements" from floor debates. Wright, 142 P.3d at 275 n.8. Wright quotes the well-settled principle that "the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill." Id. (quoting Garcia v. United States, 469 U.S. 70, 76 (1984)).
    As United's counsel noted at oral argument, in Wright, the legislator's "casual statement[]" on which the plaintiff attempted to rely was directly contradicted by the committee reports on the bill. See Wright, 142 P.3d at 275 n.8. The state

Here, Kahumoku was convicted of "knowingly subject[ing] to sexual contact another person who is mentally defective, mentally incapacitated, or physically helpless." Haw. Rev. Stat. § 707-732 (1995). United has produced competent evidence from multiple United employees that its customer service representatives at Kona Airport: assist elderly, disabled, and sick passengers around the airport and with boarding and exiting aircraft (King Decl. ¶¶ 3, 4; CSR Decls. ¶ 3); may be alone with disabled passengers (King Decl. ¶ 5; CSR Decls. ¶ 3); and may help disabled passengers to the restroom, where there are no security cameras (King Decl. ¶ 7; CSR Decls. ¶ 4). Kahumoku notes that he himself was never alone with a disabled person while employed by United and never escorted anyone to the restroom. (Kahumoku Decl. ¶ 36.) Nonetheless, it is quite clear that his job could encompass such duties and that others in his position performed these duties. Given this evidence, there is no genuine issue of fact that Kahumoku's conviction record bore a rational relationship to his job duties, _i.e._, a relationship that was "based upon reason."

---

court understandably declined to find the stray remark persuasive. Likewise, in this case, Representatives Tom's and Pendleton's statements contradict the plain language of the bill being debated and as approved by the committee reports. Representative Tom commented "'[r]ational' is a lot lower than 'reasonable'"; Representative Pendleton indicated that _any_ conviction would meet the bill's "rational relationship" test. Neither of these remarks are consistent with the commonly accepted definition of "rational", which is "of, relating to, or based upon reason." Webster's Third New International Dictionary 1885 (2002). The Court therefore declines to find these passing comments persuasive.

It is clear from Kahumoku's statements that he does not feel he took advantage of M.N. and that he disputes M.N.'s level of mental incapacity at the relevant time. (See Pl. CSF ¶ 3; Kahumoku Decl. ¶ 30, 32; Kahumoku Dep. at 81:1-9; 86:21-87:7; 90:7-24; 94:12-18.) The Court also notes Kahumoku's evidence that he has never again been investigated for or convicted of sexual assault (Kahumoku Decl. ¶ 19), that he received successful evaluations and pay increases while working for United (id. ¶¶ 7-10), and that several of his co-workers have provided heartfelt character references for him (see Pl. CSF Ex. D). Kahumoku's arguments fail, however, because they in effect try to resurrect the requirement, rejected by the state legislature, that an employer "make an individualized assessment of the circumstances associated with the record of conviction and any evidence of rehabilitation." S. Comm. on Human Resources, 19-3528, Reg. Sess., at 1208 (Haw. 1998). His arguments miss the point that the aim of section 378-2.5 is to allow employers to terminate employees based on their criminal record, in certain circumstances. Those circumstances were present in this case, and so United was entitled under the law to fire Kahumoku based on his felony conviction.

## CONCLUSION

United fired Kahumoku on the basis of his felony conviction for sexual assault in the third degree. That conviction occurred within the preceding 10 years - excluding the time that Kahumoku was incarcerated - and was rationally related

to his job duties as a customer service representative.

       For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment.

       IT IS SO ORDERED.

       DATED: Honolulu, Hawai'i, February 26, 2013



_____
Alan C. Kay
Sr. United States District Judge


Kahumoku v. United Air Lines, Inc., Civ. No. 11-00661 ACK BMK, Order Granting Defendant's Motion for Summary Judgment.